**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

NATIONAL ASSOCIATION OF SOCIAL
WORKERS, et al.,

   *Plaintiffs*,

  v.

CITY OF LEBANON, OHIO, et al.,

   *Defendants*.

Case No. 1:22-cv-258

**<u>DECLARATION OF DANIELLE SMITH</u>**

  I, Danielle Smith, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

  1. I am over the age of 18. I make these statements based on my personal knowledge.

  2. I am the Executive Director of the Ohio Chapter of the National Association of Social Workers (NASW). I have served as the full-time executive director since 2011. I am also an active, licensed social worker in the state of Ohio.

  3. NASW is the most prominent professional membership organization for social workers. NASW provides continuing education materials, practice resources, and mentorship to its members. The mission of NASW's Ohio Chapter is to strengthen, support, and unify the social work profession, to promote the development of social work standards and practice, and to advocate for social work policies that advance social justice and diversity.

  4. Our offices are located in Worthington, Ohio, which is in Franklin County. We have three full-time staff members. All of them are licensed Ohio social workers.

5.      NASW's Ohio chapter has a state board of directors that is elected by the organization's members. The board is made up of thirteen members that represent various regions of the state. Because the state chapter of NASW reports to the board of the national NASW, the state board is only advisory in nature.

6.      The national organization has a governing board that is elected by members nationwide. Each member of the national governing board is a social worker and NASW member. The national board has the ability to set NASW policy on most things. To set the organization's policies, NASW's national board works with the Delegate Assembly—a representative, decision-making body through which NASW members set broad organizational policy, establish program priorities, and develop a collective stance on public and professional issues. NASW adopted a policy statement on abortion through this process.[1]

7.      Members of NASW pay annual dues. Revenue from these dues is split between the national and state chapter.

8.      NASW has significant recognition and a strong reputation nationwide. NASW's Ohio chapter is the recognized voice for social workers in Ohio and the most prominent resource on ethics and social work practice guidelines for both members and non-members alike. Even social workers who are not members are familiar with the NASW *Code of Ethics* and view the organization as an expert resource in the field of social work.

9.      Out of the 27,000 licensed social workers in Ohio, approximately 3,864 are members of NASW.

---

[1] Nat'l Ass'n of Social Workers, *Social Work Speaks: National Association of Social Workers Policy Statements* 275-76 (11th ed. 2018).

10.     There are approximately 6,000 licensed social workers in Warren County and its

bordering counties. Approximately 1,500 of those social workers are NASW members.

11.     There are 48 licensed social workers who list their primary address within

Lebanon, Ohio, and 101 who list an address in the greater Lebanon area. This could be a home

address or a business address.

12.     Seven of these social workers with primary addresses in Lebanon are members of

NASW. However, because social workers tend to serve clients in more than one city, it is likely

that many more social workers in Ohio, including many more NASW members, serve clients

who live in Lebanon or occasionally provide services in Lebanon.

13.     For example, there are numerous agencies and nonprofit organizations that

employ social workers in Lebanon, such as SAFE (Stopping Abuse For Everyone) on Main, an

organization that provides services to domestic violence, sexual assault, and human trafficking

survivors, and Solutions Community Counseling and Recovery Centers, a non-profit behavioral

health organization. In addition, there is a medication-assisted treatment center in Lebanon that

provides services to individuals struggling with substance use disorder, some of whom also have

unwanted pregnancies. Further, social workers in and around Lebanon are present in medical

centers, integrated healthcare facilities, community mental health centers, private counseling

practices, schools, developmental disability service agencies, and other community centers.

14.     Because of the pandemic, remote social work has become more common. Often,

social workers from different parts of the state or country can assist clients located anywhere in

the state. NASW even has members with active Ohio licenses who live out of state and provide

services to clients in Ohio. NASW also has a significant fraction of its membership who conduct

client services fully or partially via remote technology. Some of those social workers may not know where the client is located when providing remote services.

15.     My job responsibilities require me to identify and solve the challenges faced by social workers on the state level, perform advocacy work on behalf of the profession, and develop educational programming for members and other social workers. Accordingly, I engage in many projects across a large number of practice areas that require me to be in close communication with social workers across Ohio.

16.     One of my most important job responsibilities is assisting members when they have practice questions or ethics concerns, including when the NASW *Code of Ethics* potentially conflicts with municipal, state, or federal law. Usually, this guidance is tailored to the individual social worker, allowing NASW to pose reflective questions in order to help the social worker protect their license and avoid liability while fulfilling their ethical duty to protect the client.

17.     This sort of guidance is one way that NASW attempts to protect individual members' licenses to practice. Prosecution or arrest for violating the law during the practice of social work may jeopardize a social worker's license.[2]

---

[2] "The board may refuse to admit for examination, issue, renew, or may suspend, revoke, reprimand or place restrictions on any, certificate of registration, or supervision endorsement applied for or issued under Chapter 4757. of the Revised Code, or may take other disciplinary action against any licensee or registrant, if that person has: (C) (6) Been convicted of, pled guilty to, pled no contest to, or had a judicial finding of guilt imposed in this state or in any other state of a misdemeanor committed in the course of practice as a professional counselor, professional clinical counselor, counselor trainee, social work assistant, social worker, social worker trainee, independent social worker, marriage and family therapist, independent marriage and family therapist or marriage and family therapist trainee; (7) Been convicted of, pled guilty to, pled no contest to, or had a judicial finding of guilt imposed in this state or any other state or jurisdiction of a crime included in the board's criminal conviction standards as established under section 9.79 of the Revised Code; (8) Committed any act that could be considered a crime in the state of Ohio. The board will refer this information to local law enforcement" Admin. Code 4757-11-01.

18.     Due to frequently-changing reproductive rights laws, practice and ethics questions from members regarding abortion access are frequent.

19.     I have read the text of the Lebanon abortion ordinance passed on May 25, 2021, Lebanon Ordinance 2021-053. Although I found the ordinance nearly impossible to understand, I am deeply concerned that—depending on how it is interpreted by police officers and prosecutors—some of NASW's members could face criminal prosecution simply for doing their jobs. At the same time, I am worried that the ordinances will put other NASW members in the position of having to violate their ethical and professional responsibilities in order to comply with what they understand the ordinances to require.

20.     NASW members may encounter a broad spectrum of topics when providing counseling and other services to clients. For example, many social workers provide counseling about pregnancy options, including abortion.

21.     Social workers are bound by numerous ethical obligations. Sometimes these ethical obligations compel a social worker to act such that they might be at risk of investigation and prosecution under the Ban. For example, social workers have a primary responsibility to maintain client confidences and promote the well-being of clients and must promote client self-determination and assist the client in clarifying their goals, with certain limited exceptions such as reporting child abuse or a serious and imminent threat to others.[3] Social Workers may not take unfair advantage of a professional relationship or exploit others to further their personal, religious, political, or business interests.[4] Finally, social workers should promote the general welfare of society, from local to global levels, and the development of people, their communities,

---

[3] NASW Code of Ethics, Ethical Standard 1.01, 1.02.
[4] *Id.*, Ethical Standard 1.06(b).

and their environments. They should engage in social and political action that seeks to ensure that all people have equal access to the resources, employment, services, and opportunities they require to meet their basic human needs and to develop fully, including the expansion of choice.[5] These ethical obligations can conflict with the Ban.

22.    Social workers also provide counseling for people in crisis. Beyond counseling, this may include hospital discharge planning, medical counseling, family and child protective services planning, and referral to community health services, to name a few.

23.    In the pregnancy context, a social worker will often provide emotional support or information about pregnancy services. Social workers may provide support to clients in connection with their feelings and questions around abortion, and they regularly help clients work through options for continuing or terminating a pregnancy. NASW members' abortion-related work relies on supportive decision making and referrals. Most assistance by social workers is phrased as questions or is in the form of objective information sharing. In the case of an unwanted pregnancy, for example, a social worker might inform a client that abortion is legal in Ohio and counsel them regarding their options for the pregnancy. It is not clear to me whether that basic sharing of information would be construed to violate the ordinance, including whether it could be construed as aiding or abetting an abortion.

24.    Once a baseline is established about the client's mental and emotional state, support network, and resources, a social worker may elect to refer the client to further treatment or resources, if needed. For unwanted pregnancies, it is a common practice for a social worker to provide a referral either directly to an abortion facility or a health-centered office to gain a secondary referral for an abortion, if the client requests. In some instances, the social worker will

---

[5] *Id.*, Ethical Standards 6.01, 6.04.

provide practical support by calling the clinic for the client to schedule the appointment or by arranging transportation. It is common for a social worker to provide this type of support when a client wishing to obtain an abortion is in distress. Again, it is not clear to me whether providing support and resources in these ways would be construed to violate the ordinance.

25.     Moreover, some NASW members provide services that may be considered "abortion doula" services. Social workers often provide emotional or mental counseling both before and during the medication abortion procedure. Both the counseling provided and the logistical support of calling a clinic, setting an appointment, or informing a client of the availability of funding and assistance with an abortion may fall under Lebanon's undefined prohibition on abortion doula services. Such support might also be construed as "giving instructions" about a prohibited abortion, connecting clients with transportation or money in ways prohibited by the ordinance, or as otherwise aiding or abetting a prohibited abortion.

26.     After learning of the Lebanon Ban and conducting further investigation, I became concerned that it could have implications for social workers counseling and assisting clients in Lebanon. On February 17, 2022, I emailed the Lebanon City Attorney, Mark Yurick in an attempt to gain clarity on how the law might apply to NASW's members. In particular, I asked: "(1)What services fall within 'abortion doula services' under the law?; (2) …[W]hat kind of counseling related to abortion (including self-managed abortion) will and will not constitute aiding and abetting or make our members accomplices under this law?; and (3) Does this ordinance apply only to social work services rendered entirely within Lebanon (e.g. both the social worker and pregnant person are present in the city), or does it also apply when the social worker is remotely providing service to a Lebanon resident?" *See* Exhibit A.

27.     The response from Mr. Yurick, which I received on February 24, 2022, did not provide clarity. Instead, it increased my concerns for NASW's members. In particular, Mr. Yurick responded: "(1) In a general sense, an 'abortion doula' is a person who provides emotional, informational and/or logistical support to a person who is seeking or having an abortion; (2) I am not able to answer this hypothetical question. Please consult your own legal counsel for appropriate legal advice. I am not a psychiatrist, therapist or a counselor, and I am not familiar with all of the activities of those professions. Whether a particular activity falls within the reach of the ordinance would be evaluated on an individual 'case by case' basis;" and "(3) I am not able to answer this hypothetical question[.] Please consult your own legal counsel for appropriate legal advice. Whether a particular activity or set of activities falls within the jurisdiction of a particular law enforcement agency is a matter of law." *See* Exhibit B.

28.     Thus, I believe that, depending on how the Lebanon Ban is interpreted by police and prosecutors in Lebanon, NASW members may be at risk of criminal prosecution for violating the Lebanon Ban, which appears to outlaw almost every form of emotional, mental, or physical support, or information sharing, for pregnant people authorized by the NASW *Code of Ethics*, if it occurs in connection with a prohibited abortion.

29.     In particular, it is not always clear whether a client is in Lebanon. While a client's home address is sometimes present in the client's file, it is not critical to the care provided by a social worker. It is a common practice for a social worker to verify that the client is within the state of Ohio, as social workers must confirm that the client is located within the state in which the social worker is licensed. However, the specific address is often not noted, unless it is called to the attention of the social worker by the client. It may also be unclear to a social worker how

far along a client's pregnancy is, whether the specific abortion they intend to seek would violate Ohio law, or whether they ultimately intend to go through with an abortion.

30.     Social workers also are not lawyers. We do not know how to interpret statutes and ordinances, or what terms like "protected by the First Amendment," "third-party standing," or "undue burden" mean. We therefore cannot tell whether particular services that social workers might provide would be covered by the ordinance's exceptions.

31.     This is the first time to my knowledge that an aspect of ethical social work practice has been criminalized.

32.     If the Lebanon Ban stands, NASW would have to expend significant time and resources to protect both its members and non-member social workers in Ohio. In order to effectively protect all social workers, NASW would need to conduct numerous webinars and tailored trainings to social workers who provide remote services, work in health care settings, or specialize in family planning services.

33.     NASW and NASW's Ohio Chapter in particular have previously provided trainings to members on a broad array of topics relating to social work practice including supervision, regulation changes by the state licensing board, changes to state and federal law (*e.g.*, emotional service animal legislation changes, animal abuse reporting requirements, "no surprise" billing laws, mandatory reporter updates, and telehealth laws), or updates to the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders and diagnosing changes that social workers must follow. Many of these training webinars are available on our website.

34.     While webinars are good, they do not reach every social worker and do not account for individual circumstances. Accordingly, I would feel obligated to conduct further outreach by contacting every Ohio NASW member who (1) lives in Lebanon or (2) has potential

9

clients in Lebanon, regardless of the social workers' physical presence in the city. In fact, I have

already contacted all 101 social workers in the greater Lebanon area to alert them about their risk

under the Ban. I have spent approximately 40 hours of my time in one-on-one phone

conversations with those members, attempting to help them to navigate the potential conflicts

between their ethical and professional obligations and this vague law. If the ordinance stands, I

would need to spend hundreds more hours to further contact members to talk about the specifics

of their practice in order to keep their licenses protected. I would also feel ethically obligated to

conduct additional state-wide coverage and outreach to other NASW state chapters to spread the

information, because it is possible that Ohio-licensed social workers in neighboring states may

have telehealth clients who are in Lebanon.

35.     Finally, as the executive director of a professional organization that seeks to

protect the licensing of its members, when a social worker and/or client is from Lebanon, Ohio, I

would consider advising members to avoid discussing abortion in any form or halt a session if

the topic arises. Such a requirement would be in opposition to NASW's stated national policy

position that reproductive freedom is a fundamental right and social workers have an ethical

obligation to assist a client wishing to obtain one.

36.     Members have expressed concern about the possibility of criminal prosecution.

Many noted that without clarity, they would not talk to any client from Lebanon about abortion

or pregnancy issues. Others have noted they may not accept any client from Lebanon. More than

one member suggested they might prematurely end an ongoing session if a client from Lebanon

brought up the topic of pregnancy or abortion. Most members expressed that they want

significant training on what they may and may not do. For example, members have asked how

proof would be established, whether the city would have the right to clients' documentation, and

if this law would change confidentiality and informed consent procedures with clients. Other members have asked if they are wholly prevented from using the word "abortion" in any context. I've also been asked if members would violate the ordinance by meeting with a client outside of Lebanon to talk about abortion-related topics. These are just a few of the many questions members have recently asked regarding the ordinance.

37.     Individual outreach and guidance in order to mitigate the risks of the ordinance to members would require me to hire at least one full time employee for 3-6 months. This employee would need to create education materials, contact social workers, and inform members of the risks of Lebanon's ordinance. Three months would allow for guidance on the most basic level; effective, individualized responses would require the staffer to be employed for a much longer period of time, possibly years. To be most careful, I would likely need to travel to Lebanon and have in-person trainings with agencies and members providing services in the area. Further, if every licensed social worker with telehealth clients in Ohio is potentially criminally liable, I would need to conduct outreach across the state to deal with concerns under the Ban.

38.     I had no previous plans to hire additional staff before the Ban went into effect, and I am not certain that I can procure the funds I would need in order to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2022 in Columbus, OH.

Danielle Smith

**SMITH DECLARATION**

**EXHIBIT A**

**From:** Smith, Danielle █████████████████████████
**Sent:** Thursday, February 17, 2022 4:23 PM
**To:** Mark Yurick ████████████████████████
**Subject:** Questions for social workers re: sanctuary city for the unborn ordinance
**Importance:** High

Hello Mr. Yurick,

I am the Executive Director of the National Association of Social Workers, Ohio Chapter. We are the primary social workers' professional membership association in Ohio, with thousands of members statewide, including hundreds in the Southwest Ohio region.

We have recently become aware of an ordinance designating Lebanon as a "sanctuary city for the unborn." In an educational panel on recent abortion law developments that we conducted for our members, a handful of them asked questions about their ability to provide services to clients as a result of this ordinance. I'm hoping you can provide some clarity on the following:

1. What services fall within "abortion doula services" under the law?

2. As social workers, one of our primary activities is counseling clients. Could you please tell us what kind of counseling related to abortion (including self-managed abortion) will and will not constitute aiding and abetting or make our members accomplices under this law?

3. Does this ordinance apply only to social work services rendered entirely within Lebanon (e.g. both the social worker and pregnant person are present in the city), or does it also apply when the social worker is remotely providing service to a Lebanon resident? In light of the pandemic and increase in telehealth, this has been a major question from our membership.

Because it's essential that our members understand any limitations on our practice under your new ordinance, we look forward to receiving your response at your very earliest convenience, hopefully within the next week or so. Thank you!

**Danielle Smith, LSW, CAE**

Social Worker, Executive Director

National Association of Social Workers- Ohio Chapter

████████████████████████████

███████████

Pronouns: She/her/hers

**Advance and Protect Your Career with NASW –** Everything we do at NASW is focused on making your professional life better. Find the career resources you need at NASW.

# SMITH DECLARATION

# EXHIBIT B

**From:** Mark Yurick █████████████████████
**Sent:** Thursday, February 24, 2022 11:02 AM
**To:** Smith, Danielle █████████████████████
**Cc:** Scott Brunka ██████████████████; Dan Burke ██████████████; Jeff Mitchell ████████████████████; zDpt - City Council ████████████
**Subject:** RE: Questions for social workers re: sanctuary city for the unborn ordinance

 [EXTERNAL]

Dear Ms. Smith:


I would like to be helpful, but please understand that I am not your attorney and I do not have an attorney/client relationship with you or your organization.  I would strongly advise you to consult your organization's legal counsel for guidance in following Lebanon's Sanctuary City Ordinance.  If you do not have a copy of the ordinance, I would be happy to provide you or your legal advisor with a copy.  I am not familiar with you, your organization or any services you may or may not provide.  My answers to your questions do not constitute legal advice and cannot and do not insulate you or any of your counselors, agents or employees from criminal prosecution or civil legal liability.


1.  In a general sense, an "abortion doula" is a person who provides emotional, informational and/or logistical support to a person who is seeking or having an abortion.


2.  I am not able to answer this hypothetical question. Please consult your own legal counsel for appropriate legal advice.  I am not a psychiatrist, therapist or a counselor, and I am not familiar with all of the activities of those professions. Whether a particular activity falls within the reach of the ordinance would be evaluated on an individual "case by case" basis.


3.  I am not able to answer this hypothetical question Please consult your own legal counsel for appropriate legal advice.  Whether a particular activity or set of activities falls within the jurisdiction of a particular law enforcement agency is a matter of law.


If your legal advisor has any questions, she or he may contact me directly. Thank you for your interest.


Best.


Mark S. Yurick, City Attorney.